## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHELLE K. SAVOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 7225 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| BMW OF NORTH AMERICA, LLC, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Savoy brings this action alleging violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 against BMW of North America, LLC ("BMW") and Pinnacle Technical Resources, Inc. ("Pinnacle"). (R. 1, Compl. ¶¶ 86-113.) She also alleges defamation against BMW and James Fox ("Fox"). (*Id.* ¶¶ 114-30.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), BMW and Fox move to dismiss Plaintiff's Title VII and Section 1981 claims for discrimination, harassment, and hostile work environment. (R. 16, Mot. at 2-3.) For the reasons stated below, the motion to dismiss is denied.

## RELEVANT FACTS

Plaintiff is African American and an Illinois resident. (R. 1, Compl. ¶ 4.) BMW is a company that sells cars and other vehicles to a network of dealerships throughout the United States. (*Id.* ¶ 9.) Plaintiff worked for BMW through Pinnacle, a staffing company through which BMW hired persons on a "contingent" basis until they are hired as permanent BMW employees. (*Id.* ¶¶ 12-14.) Such contingent workers are not offered benefits available to permanent BMW employees. (*Id.* ¶ 22.) Plaintiff alleges that the vast majority of BMW's permanent employees

are white, and that BMW regularly refuses to promote minority contingent workers to permanent employee positions. (*Id.* ¶¶ 24-25.)

Plaintiff began working part-time at BMW in 2006, through a staffing agency, for BMW Financial Services. (*Id.* ¶ 10.) In 2007, Plaintiff began working at BMW full-time as the coordinator for its Central Region Mini Market division. (*Id.* ¶ 11.) Plaintiff alleges that she received universal praise from her supervisors before July 2016. (*Id.* ¶¶ 16, 19-20.) BMW, however, never hired Plaintiff as a permanent employee and she instead continued working as a contingent employee through April 17, 2017, at which time she was placed on administrative leave. (*Id.* ¶ 12.) She claims that BMW refused to hire her as a permanent employee despite being qualified for such a position. (*Id.* ¶ 26.)

Plaintiff's supervisor in 2013 allegedly advised Plaintiff that she would become a permanent employee, but later notified her that the employee position was given to another BMW employee, who was white, and whose previous job position was being eliminated by BMW. (*Id.* ¶ 27.) Plaintiff alleges that BMW hired several other white contingent workers for job positions similar to Plaintiff's position, and that BMW has failed to hire African Americans as permanent employees when presented with an opportunity to do so. (*Id.* ¶¶ 28-29.)

Plaintiff asserts that she regularly experienced or witnessed racial and gender-based discrimination while working at BMW. (*Id.* ¶ 30.) She alleges that BMW vice president Kevin Coon ("Coon") demanded that Plaintiff or another female cut his coffee cake at a business meeting. (*Id.* ¶ 32.) Plaintiff also avers that, while reviewing the Central Region Mini Market division's organizational chart, Coon stated that "MINI really *is* black," and further stated at a fundraiser on Chicago's south side, "what is this, [t]he Chitlin Circuit?" (*Id.* ¶¶ 33-34 (emphasis in original).) Plaintiff alleges that he also asked another female contingent worker if she "wanted

to be spanked," among a "host of other unprofessional, racist[,] and sexist remarks[.]" (*Id.* ¶¶ 31-35.)

In July 2016, Fox was appointed Regional Business Manager of BMW's Central Region, and he became Plaintiff's supervisor. (*Id.* ¶¶ 36, 40-43.) While Plaintiff was training Fox on budgets in his office, Fox allegedly asked Plaintiff about her age, marital status, how many children she had, and whether all her children had the same father. (*Id.* ¶ 36.) Plaintiff also alleges that Fox uttered vulgar and profane comments about his sexuality in response to a woman that questioned his sexuality. (*Id.* ¶ 37.) Fox also allegedly commented about oral sex to other persons working at BMW and, from July 2016 to January 2017, regularly used sexual, demeaning, and profane language. (*Id.* ¶¶ 38-39.)

In September 2016, Plaintiff allegedly told Fox that she was dissatisfied with BMW's failure to hire minority contingent workers as permanent employees, and that it appeared to her she had not been hired as a permanent employee because of her race. (*Id.* ¶ 40.) In response, Fox allegedly stated that although Plaintiff did her job well, she would never be hired as a permanent employee. (*Id.* ¶ 41.) Fox also allegedly said that he was "surprised BMW hasn't been sued," and that "it sucks but that's the price if you want to play" because "[t]hat's just how the Germans operate." (*Id.*)

Plaintiff claims that she had never complained about discrimination at BMW before September 2016 because others who did complain suffered negative job consequences. (*Id.* ¶ 42.) Plaintiff alleges that, the day after she complained to Fox about discrimination against minorities, she received—without explanation—a work schedule with reduced hours. (*Id.* ¶¶ 44-49.) Plaintiff also alleges that Fox disseminated several false explanations for the reduction in Plaintiff's work hours. (*Id.* ¶¶ 50-52.)

Plaintiff claims that Fox took further actions that negatively affected her, including requesting that she sign a temporary work contract—something that Fox allegedly had not requested of any other worker. (*Id.* ¶¶ 53-54.) Fox also allegedly began to criticize Plaintiff's performance and delegated her job responsibilities to less-qualified employees and interns. (*Id.* ¶¶ 55-62.) In October 2016, Fox allegedly accused Plaintiff of fraud related to the hours she had entered on her time cards reflecting the number of hours she worked. (*Id.* ¶ 63.) Plaintiff claims that these accusations were false. (*Id.*)

On November 2, 2016, Plaintiff filed a discrimination complaint against Pinnacle and BMW with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 64; R. 1-1, BMW EEOC Compl.; R. 1-2, Pinnacle EEOC Compl.) Plaintiff's EEOC complaint against BMW states that she believes she had "been discriminated against because of [her] sex, female, and race, Black, and in retaliation for engaging in protected activity[.]" (R. 1-1, BMW EEOC Compl. at 2.) Plaintiff's EEOC complaint is based on BMW's alleged failure to hire her as a permanent employee, having her hours reduced, being wrongly accused of falsifying time sheets, and offering her a temporary work contract. (*Id.*) She checked boxes on the EEOC complaint form indicating her belief that BMW's discrimination against her was based on her race, her sex, and BMW's desire to retaliate, and that BMW's discriminatory conduct occurred in November 2016 and continued since that date. (*Id.*) Plaintiff included the same language and checked the same boxes in her EEOC complaint against Pinnacle. (R. 1-2, Pinnacle EEOC Compl. at 2.) The EEOC ultimately terminated its processing of both EEOC complaints and issued to Plaintiff notices of her right to sue Pinnacle and BMW. (R. 1-1, BMW EEOC Compl. at 1; R. 1-2, Pinnacle EEOC Compl. at 1.)

After Plaintiff filed her EEOC complaints, Fox prepared a 2016 performance review for Plaintiff in which he allegedly gave her a negative review. (R. 1, Compl. ¶ 65.) Plaintiff claims that Fox then began to ask her to manage his travel arrangements, despite that task not being part of Plaintiff's job description. (*Id.* ¶ 66.) Then, on April 17, 2017, Plaintiff was placed on administrative leave so that BMW could investigate her charges of discrimination and retaliation. (*Id.* ¶ 73.) The next day, Fox allegedly stated on a conference call with BMW employees that Plaintiff was on a "much-needed vacation" and that she should not be "disturbed." (*Id.* ¶ 74.) As of the filing of her complaint, Plaintiff has remained on administrative leave. (*Id.* ¶ 75.)

## PROCEDURAL HISTORY

On October 6, 2017, Plaintiff filed this suit against BMW, Pinnacle, and Fox. (R. 1, Compl.) In Count I, Plaintiff alleges that BMW and Pinnacle discriminated against her and harassed her because of her race and created a hostile work environment in violation of Title VII. (*Id.* ¶¶ 86-94.) Count II alleges that BMW retaliated against Plaintiff for complaining about conduct that allegedly violated Title VII. (*Id.* ¶¶ 95-100.) Count III claims that BMW and Pinnacle violated 42 U.S.C. § 1981 by discriminating against Plaintiff and harassing her because of her race as well as creating a hostile work environment. (*Id.* ¶¶ 101-07.) Count IV asserts that BMW retaliated against Plaintiff for complaining about conduct that she believed was unlawful under Section 1981. (*Id.* ¶¶ 108-13.) In Count V, Plaintiff alleges defamation against BMW and Fox for Fox's statement that Plaintiff was on a "much-needed vacation." (*Id.* ¶¶ 114-30.)

On December 5, 2017, Pinnacle answered the complaint. (R. 12, Pinnacle Answer.) On the same day, BMW and Fox filed their present motion to dismiss Counts I and III as well as their joint answer to the complaint. (R. 16, Mot. at 2-3; R. 19, BMW & Fox Answer.)

In their motion to dismiss, BMW and Fox argue that the Court should dismiss Plaintiff's

Title VII harassment and hostile work environment claims in Count I because they are not

reasonably related to the claims asserted in her underlying EEOC complaint. (R. 17, Mem. at 7-

8.) BMW and Fox contend that Plaintiff's EEOC complaint only alleged discrimination, and

therefore any claims of harassment or hostile work environment must be dismissed for failure to

exhaust administrative remedies available through the EEOC. (*Id.*) BMW and Fox also contend

that the Court should dismiss the claims of harassment and hostile work environment in Counts I

and III because Plaintiff fails to allege: any discriminatory comments made to Plaintiff

personally as opposed to other persons; comments that were related to Plaintiff's race; or any

conduct that was "severe or pervasive." (*Id.* at 8-10.) With respect to Plaintiff's allegations of

discrimination in Counts I and III, BMW and Fox argue that the Court should dismiss those

claims because Plaintiff does not allege that she applied for any permanent employee position

with BMW or that there exist similarly-situated individuals of another race who were offered a

position for which Plaintiff was qualified. (*Id.* at 11-12.)

Plaintiff opposes the motion to dismiss, arguing that her harassment and hostile work

environment claims are reasonably related to her EEOC complaint. (R. 27, Resp. at 7-9.)

Plaintiff also argues that she alleges sufficient facts to support her discrimination, harassment,

and hostile work environment claims. (*Id.* at 3-7, 9-11.)

## LEGAL STANDARD

A complaint must set forth a "short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion to dismiss pursuant to Rule

12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon

which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015)

(citation and internal alteration omitted). To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Tobey v. Chibucos*, No. 16-3927, 2018 WL 2210619, at *6 (7th Cir. May 15, 2018).

## ANALYSIS

### I.    Plaintiff's Harassment and Hostile Work Environment Claims

#### A.    Exhaustion of Administrative Remedies

BMW and Fox first argue that the Court should dismiss Plaintiff's harassment and hostile work environment claims because those claims are not reasonably related to the charges in her EEOC complaint, and therefore she has not exhausted available administrative remedies as to those claims. (R. 17, Mem. at 7.) "A plaintiff suing under Title VII may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint." *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017) (citation and internal quotation marks omitted). Claims are within the scope of an EEOC complaint if they are "like or reasonably related to those contained in the EEOC complaint." *Id.* (citation omitted). If they are, the Court asks "whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.*

(citation omitted). "Claims are 'reasonably related' when there is a factual relationship between them," in other words, when they "describe the same conduct and implicate the same individuals." *Id.* (citation and internal quotation marks omitted); *see also Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) ("To be like or reasonably related, the relevant claim and the EEOC charge must, at minimum, describe the same conduct and implicate the same individuals." (citation and internal quotation marks omitted)). "The standard is a liberal one in order to effectuate the remedial purposes of Title VII." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992) (citation omitted).

For example, in *Brindley v. Target Corp.*, 761 F. Supp. 2d 801 (N.D. Ill. 2011), the plaintiff's hostile work environment claim was found to be reasonably related to her EEOC complaint because the EEOC, in investigating her claim, "would have come to understand that the claimed continual deprivations" of career opportunities "could equate to a hostile work environment claim." *Brindley,* 761 F. Supp. 2d at 807; *see also Carr v. Zaruba*, No. 15 C 11690, 2017 WL 1250836, at *3 (N.D. Ill. Apr. 5, 2017) (denying motion to dismiss for failure to exhaust remedies with the EEOC because the plaintiff's EEOC complaint and her claims in federal court "describe the same circumstances and participants" (citation omitted)). Conversely, in *Reynolds v. Tangherlini*, 737 F.3d 1093 (7th Cir. 2013), the plaintiff's hostile work environment lawsuit arose from activity that occurred long before the actions the plaintiff complained of in his EEOC complaint and therefore was not reasonably related to his EEOC complaint. *Reynolds*, 737 F.3d at 1101; *see also Radek v. Target Corp.*, No. 16 C 4750, 2017 WL 6733717, at *3-4 (N.D. Ill. Dec. 19, 2017) ("Where an EEOC charge is based only on an employee's termination, a hostile work environment claim that involves a separate set of

incidents over a period of time preceding the termination is not sufficiently related to the EEOC charge.").

In this case, Plaintiff alleges several discriminatory acts in her EEOC complaint, namely, that she had her work hours reduced, was accused of falsifying timesheets, was not promoted to a permanent employee position, and was required to enter into a contract that was different from others working for BMW. (R. 1-1, BMW EEOC Compl. at 2.) These several, different acts of alleged discrimination in the EEOC complaint involve the same people and circumstances in Plaintiff's lawsuit, because both the EEOC complaint and present lawsuit are based on the same conduct of Plaintiff's supervisor, Fox. (*Compare id.*, with R. 1. Compl. ¶¶ 30-64, 86-94.) Additionally, Plaintiff alleges in her EEOC complaint that the discriminatory conduct was a "continuing action," rather than a discrete instance of discrimination. (R. 1-1, BMW EEOC Compl. at 2.) This case, therefore, is like *Brindley* and survives a motion to dismiss because Plaintiff has alleged in her EEOC complaint that BMW and Fox on several occasions deprived her of career opportunities, which is enough to provide notice of a hostile work environment claim. *Brindley,* 761 F. Supp. 2d at 807. The Court therefore concludes that her allegations of several different instances of discriminatory conduct in her EEOC complaint are reasonably related to the hostile work environment claims in her complaint. *See Moore*, 641 F.3d at 257; *Rufus v. City of Chicago*, No. 17-CV-4192, 2018 WL 1911799, at *3 (N.D. Ill. Apr. 23, 2018) (noting that "hostile environment claims . . . involve repeated conduct" as opposed to a "discrete act of discrimination"); *Tolston-Allen v. City of Chicago*, No. 16-CV-6981, 2017 WL 951252, at *3-4 (N.D. Ill. Mar. 8, 2017) (hostile work environment claim was reasonably related to EEOC complaint where hostile work environment allegations grew out of "the allegations of harassment brought in the EEOC charge").

BMW and Fox suggest that a discrimination claim in an EEOC complaint cannot be reasonably related to a harassment or hostile work environment lawsuit as a matter of law, but the legal authority they rely on fails to support this rigid proposition. (R. 17, Mem. at 7.) Instead, such authority acknowledges that the analysis hinges on the facts of each case. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111-12 (7th Cir. 1992) (charges of discrimination in EEOC complaint not reasonably related to racial harassment claim because EEOC complaint was narrowly based on the plaintiff's termination); *Anderson v. Advocate Health & Hosps. Corp.*, No. 12 C 7985, 2014 WL 4922371, at *6 (N.D. Ill. Sept. 29, 2014) ("Nor are there any facts in either the charge or the questionnaire leading to a reasonable inference that Anderson was pursuing a hostile work environment claim."); *Shankle v. Vill. of Melrose Park*, No. 12 C 6923, 2013 WL 1828929, at *4 (N.D. Ill. Apr. 30, 2013) (ruling that the plaintiff's "EEOC charges say nothing about alleged sexual harassment or a hostile work environment" and observing that discrimination and hostile work environment claims "*ordinarily* are not reasonably related" (emphasis added)); *Hall v. Walsh Constr. Co.*, No. 11 CV 08706, 2012 WL 3264921, at *4 (N.D. Ill. Aug. 9, 2012) ("The court agrees that [the plaintiffs'] unlawful termination claims do not involve the same conduct that was implicated in their EEOC charges.").

The controlling analysis looks at whether an EEOC complaint and allegations in a lawsuit are "reasonably related" because they "describe the same conduct and implicate the same individuals," or because the hostile work environment claim "could have developed from the EEOC's investigation of the charges before it." *Sommerfield*, 863 F.3d at 648 (citation omitted). The Court concludes that Plaintiff's EEOC complaint does describe the same conduct and implicate the same individuals as her harassment and hostile work environment claims, and an EEOC investigation related to Plaintiff's discrimination claim would have likely led to discovery

10

of the alleged conduct underlying her harassment and hostile work environment claims. *See id.*;

*see also Van Vliet v. Ill. Dep't of Human Servs.*, No. 17 C 3077, 2018 WL 351727, at *4-5 (N.D.

Ill. Jan. 10, 2018) ("[T]he Court concludes that Van Vliet's charges of retaliation and changed

employment conditions are reasonably related to the allegations of a hostile work environment in

her Complaint, since investigation of the former would likely have led to discovery of the

latter."). Accordingly, the motion to dismiss is denied to the extent it argues that Plaintiff failed

to exhaust administrative remedies.

### B. Substance of the Allegations

Next, BMW and Fox argue that Plaintiff fails to state a claim for hostile work

environment.[1] "To state a Title VII hostile work environment claim, a plaintiff must allege (1)

she was subject to unwelcome harassment; (2) the harassment was based on" her race; (3) "the

harassment was severe or pervasive so as to alter the conditions of employment and create a

hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v.*

*Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir.

2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or

[pervasive] to alter the conditions of employment such that it creates an *abusive* relationship." *Id.*

at 834 (emphasis in original). "In determining whether a workplace is objectively hostile," the

Court must consider "the totality of the circumstances, including: the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

---

[1] BMW and Fox argue that Plaintiff has failed to allege sufficient facts to sustain claims for "race-based harassment and hostile work environment." (R. 17, Mem. at 8.) They, however, only present an argument based on the elements for a hostile work environment claim and do not argue that a claim for "race-based harassment" requires any allegations different from a hostile work environment claim. (*See id.* (citing *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010).)

performance." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017) (citation and internal quotation marks omitted). "The specific circumstances of the working environment and the relationship between the harassing party and the harassed also bear on whether that line is crossed." *Id.* at 550 (citation, internal quotation marks, and alteration omitted). "There is no 'magic number' of instances or type of slur that indicates a hostile work environment." *Id.* Instead, the Court looks to the "pervasiveness and severity" of language used, which are "inversely related"—a "severe episode that occurs as rarely as once and a relentless pattern of lesser harassment both may violate Title VII." *Id.* (citation and internal quotation marks omitted).

Plaintiff alleges that her supervisors at BMW made a "host of racist" remarks in her presence, and that Fox made other denigrating and racially-charged comments to her, including allegedly asking Plaintiff whether all her children had the same father. (R. 1, Compl. ¶¶ 34-36, 39, 40-41.) These allegations are enough to sufficiently plead the elements of a hostile work environment claim because they give rise to a plausible inference that Plaintiff was subjected to harassment due to her race that was severe and pervasive, and there is a basis for employer liability given that the persons engaging in the alleged conduct were her supervisors. *See Moses v. Sloan Valve Co.*, No. 16 C 9972, 2017 WL 3838040, at *3 (N.D. Ill. Sept. 1, 2017) ("These instances of harassment, which (with reasonable inferences drawn in Plaintiffs' favor) had a racial angle, have the requisite severity and frequency to state a claim, at least at the pleading stage."); *see also Huri*, 804 F.3d at 834 (ruling that the plaintiff adequately stated a hostile work environment claim based on her status as a Muslim and Arab because "it is plausible that the screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment of Huri and her daughter could plausibly be abusive"); *Andonissamy v. Hewlett-*

*Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008) ("Under Title VII, an employer can be vicariously liable for a hostile work environment created by a supervisor[.]").

BMW and Fox nonetheless argue that Plaintiff's hostile work environment claim fails because she did not personally hear some of the alleged comments made by her supervisors; rather, her supervisors allegedly made those comments to others who then told Plaintiff what her supervisors had said. (R. 17, Mem. at 8-9.) That Plaintiff did not hear some racist remarks fails to provide grounds for dismissal. The remaining alleged comments that she did hear as well as the "host" of other racist remarks in her presence are enough at this stage to give rise to a hostile work environment claim. *See Moses*, 2017 WL 3838040, at *3; *Gaston v. Bd. of Education of the City of Chicago*, No. 17 C 1024, 2017 WL 3234375, at *3 (N.D. Ill. July 31, 2017) (ruling that plaintiff stated a claim for hostile work environment where she alleged that her supervisor "insulted her, sent her emails to attend baseless disciplinary meetings, forced [her] to perform work functions which she was not qualified to perform, gave [her] a poor rating, loaded her with excessive assignments, and sent her a harassing email about jury duty" because "it is premature at the pleadings stage to conclude just how abusive" her work environment was (citation omitted)). Defendants also argue that "the majority of the comments that Plaintiff alleges show racial harassment have nothing to do with Plaintiff's race and are not racial in nature," (R. 17, Mem. at 9), but this argument fails because, as noted above, the Court concludes that Plaintiff does allege enough racially-charged comments and misconduct directed toward her sufficient to defeat a motion to dismiss.

Finally, BMW and Fox argue that Plaintiff has failed to allege any conduct that was "severe" or "pervasive." (*Id.* at 10.) The Court disagrees. As described above, Plaintiff has alleged several instances in which her supervisors uttered racist or racially-charged remarks that,

accepting her allegations as true and drawing all reasonable inferences in her favor, could be considered "severe" or "pervasive." *See Moses*, 2017 WL 3838040, at *3; *Gaston*, 2017 WL 3234375, at *3. Accordingly, the Court denies the motion to dismiss Plaintiff's hostile work environment claim.

## II. Plaintiff's Discrimination Claim

BMW and Fox argue that Plaintiff's discrimination claim is essentially a "failure to hire" claim in which she must allege that she applied for a position that she was denied. (R. 17, Mem. at 11-12.) "[A] plaintiff alleging employment discrimination under Title VII," however, "may allege these claims quite generally."[2] *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A complaint need not allege all, or *any*, of the facts logically entailed by the claim, and it certainly need not include evidence." *Id.* (emphasis in original, citation and internal quotation marks omitted); *see also Huri*, 804 F.3d at 833 ("A complaint that identifie[s] the type of discrimination the plaintiff thought occurred, by whom, and when [is] all the plaintiff [needs] to put in her complaint." (citation, internal alteration, and quotation marks omitted)). "In order to prevent dismissal under Rule 12(b)(6), a complaint alleging discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her membership in a protected class." *Montoya v. Atkore Int'l, Inc.*, No. 17 C 3628, 2018 WL 1156245, at *3 (N.D. Ill. Mar. 2, 2018) (internal alterations omitted) (quoting *Tamayo*, 526 F.3d at 1084). There are three general categories of adverse employment actions that are actionable under Title VII:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in

---

[2] The Court applies the same analysis to Plaintiff's Title VII and Section 1981 claims premised on race discrimination. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]").

which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citation omitted).

Plaintiff sufficiently alleges that Fox and another supervisor at BMW took numerous adverse employment actions against her because of her race, such as: reducing her work hours; failing to promote her to a permanent employee position that would have provided her with additional benefits; placing her on administrative leave; delegating her job duties to other, less-qualified employees; and assigning her tasks that might stunt the growth of her career. (R. 1. Compl. ¶¶ 21-29, 44-54, 56-62, 66, 73.) She also alleges the type of discrimination that occurred (discrimination because of her race), by whom (Fox and her previous supervisor), and the time period in which the discrimination occurred (November 2016 to April 2017). (*Id.* ¶¶ 21-85.) These allegations are sufficient to survive a motion to dismiss. *Huri*, 804 F.3d at 833; *Tamayo*, 526 F.3d at 1084.

The Court rejects BMW's and Fox's attempt to shoehorn Plaintiff's discrimination claim into a "failure-to-hire" analysis. (*See* R. 17, Mem at 11-12.) As noted above, to survive a motion to dismiss, Plaintiff need only allege that her employer took an adverse employment action against her because of her race, and she satisfies this requirement. *See Huri*, 804 F.3d at 833; *Tamayo*, 526 F.3d at 1084. Additionally, the Court rejects BMW's and Fox's argument that Plaintiff must allege that she applied to a permanent position at BMW. (R. 17, Mem. at 11.) First, the cases BMW and Fox rely on are unpersuasive because they are summary judgment cases. *See Loyd v. Phillips Bros.*, 25 F.3d 518, 522, 524 (7th Cir. 1994) (reversing in part and

15

affirming in part the district court's judgment); *Carter v. Family Video Movie Club, Inc.*, No. 1:12-CV-00108-TWP, 2013 WL 3989421, at *1 (S.D. Ind. Aug. 2, 2013) (granting in part and denying in part summary judgment against the plaintiff); *Wilkerson v. Menard, Inc.*, No. 2:08-CV-26, 2009 WL 1011099, at *1 (N.D. Ind. Apr. 15, 2009) (granting summary judgment against plaintiff); *Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1216 (N.D. Ill. 2005) (same). In addition to the different procedural posture of this case, "[w]hen an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement . . . is loosened somewhat" in a claim based on an employer's failure to hire or promote. *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States of Am.*, 48 F. Supp. 3d 1054, 1098 (N.D. Ill. 2014) (citation omitted). Here, Plaintiff alleges that BMW's contingent employees are promoted to permanent employees "after they have proven to be capable at their jobs," and the complaint suggests that there is no application process for a permanent employee position as opposed to a process in which BMW unilaterally promotes employees. (R. 1, Compl. ¶¶ 23, 27.) In such circumstances, a plaintiff need not prove, much less allege, that she applied for an open job position. *See Steinbarth v. Whole Foods Mkt.*, 72 F. Supp. 3d 916, 924 (N.D. Ill. 2014) ("[T]he plaintiff can establish the application element of a prima facie case by showing that, had she known of an . . . opening, she would have applied[.]" (citation omitted)); *Fitzgerald v. Fraites*, No. 95 C 7717, 1996 WL 480379, at *4 (N.D. Ill. Aug. 22, 1996) (collecting cases and observing that "there is significant authority to suggest that [it] is not always the case" that a plaintiff must establish that she applied to a job vacancy in the context of a failure-to-hire or promote claim, such as where an employee was "deterred" from applying for a position or led to believe it would be "fruitless" to apply).

BMW and Fox also argue that the Court should dismiss Plaintiff's discrimination claim because she has not alleged that BMW filled an open position that she was qualified for with a similarly-situated individual of a different race, or that BMW left such a position vacant instead of hiring Plaintiff. (R. 17, Mem. at 12.) The complaint, however, provides fair notice of other, similarly-situated white contingent employees who were promoted to permanent BMW employee positions. (R. 1, Compl. ¶¶ 23-24, 28, 40-41.) Additionally, whether similarly-situated comparators exist is a matter addressed at summary judgment, not on a motion to dismiss. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination[.]"); *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 953 (N.D. Ill. 2013) ("[T]he 'similarly situated' argument is an evidentiary standard applicable at the summary judgment stage; it is not a requirement in reviewing the sufficiency of a complaint."). Accordingly, BMW's and Fox's motion to dismiss Plaintiff's discrimination claim is denied.

## CONCLUSION

For the foregoing reasons, BMW's and Fox's motion to dismiss (R. 16) is DENIED. The parties shall appear for a status hearing on June 20, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: June 4, 2018